# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TEVA PHARMACEUTICALS USA, INC.;
TEVA PHARMACEUTICAL INDUSTRIES, LTD.;
and TEVA NEUROSCIENCE, INC.,

        **Plaintiffs,**

v.                        //    CIVIL ACTION NO. 1:17CV7
                                (Judge Keeley)

MYLAN PHARMACEUTICALS, INC.;
MYLAN, INC.; and NATCO PHARMA LTD.,

        **Defendants.**

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE TO THE DISTRICT OF DELAWARE [DKT. NO. 25]

On January 17, 2017, the plaintiffs, Teva Pharmaceuticals USA, Inc. ("Teva USA"); Teva Pharmaceutical Industries, Ltd. ("Teva Ltd."); and Teva Neuroscience, Inc. (collectively, "Teva"), filed this action for patent infringement and declaratory judgment against the defendants, Mylan Pharmaceuticals, Inc.; Mylan Inc. (collectively, "Mylan"); and Natco Pharma Ltd. ("Natco") (Dkt. No. 1). Teva then asked the Court to set a schedule for briefing and hearing its motion for a preliminary injunction (Dkt. No. 20), but shortly thereafter, the defendants filed a motion to transfer venue to the District of Delaware (Dkt. No. 25).

At a status conference held on February 16, 2017, the parties agreed that the Court should set an expedited briefing schedule and decide the defendants' motion to transfer before taking up Teva's motion for a preliminary injunction (Dkt. No. 37). After full briefing, the Court heard argument on the motion to transfer venue on March 6, 2017 (Dkt. Nos. 44; 49; 51). For the reasons that

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
TO TRANSFER VENUE TO THE DISTRICT OF DELAWARE [DKT. NO. 25]**

follow, the Court **GRANTS** the motion and **TRANSFERS** this case to the
District of Delaware (Dkt. No. 25).

### I. BACKGROUND

**A.    The Complaint**

In its complaint, Teva alleges that the defendants are
attempting to market, manufacture, and sell a generic version of
Teva's COPAXONE® injection prior to the expiration of U.S. Patent
No. 9,155,775 ("the '775 patent"), which Teva claims is infringed
or will be infringed by the defendants' actions (Dkt. No. 1 at 1).

The United States Patent and Trademark Office issued the '775
patent to Teva Ltd. on October 13, 2015 (Dkt. No. 1-1 at 2), and it
is not set to expire until January 28, 2035 (Dkt. No. 1 at 10).
Teva Ltd. is the sole owner of the patent and has granted Teva USA
an exclusive license "to use, offer to sell, sell and import the
COPAXONE 40 mg/ml product." Id. Teva USA holds the approved New
Drug Application ("NDA") for the COPAXONE® product at issue: a 1 ml
prefilled syringe, containing 40 mg/ml glatiramer acetate, to be
administered three times per week for the treatment of patients
with relapsing forms of multiple sclerosis ("the product"). Id.
Glatiramer acetate is a complex mixture of polypeptide chains, and
according to Teva, the invention claimed in the '775 patent
reflects the discovery that "filtering pharmaceutical preparations
of glatiramer acetate at temperatures" of above 0 degrees to 17.5

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
TO TRANSFER VENUE TO THE DISTRICT OF DELAWARE [DKT. NO. 25]**

degrees Celsius improves the filtration process and facilitates commercial production. Id. at 11.

Mylan filed an Abbreviated New Drug Application ("ANDA") seeking FDA approval to market a generic version of the product. As with all such drugs, the generic product "must be equivalent to the innovator drug" and have an active ingredient that is the same as that in the innovator drug. Id. at 12. According to Teva, the product is too complex to be fully characterized and its "method of action . . . has not been fully elucidated." It is "a safe and effective treatment," but Teva is uncertain what attributes of the product accomplish this purpose. It does, however, believe that the method of manufacturing plays a role in "the action and effectiveness" of the product. Teva claims that, by presumably manufacturing commercial batches of the product in a manner that meets the requirements for FDA approval, Mylan necessarily must be infringing the '775 patent. Id. It contends that the processes of the '775 patent "are the only commercially feasible means of producing commercial scale quantities" of the product. Id. at 13.

**B.   Related Proceedings**

This action is among the most recent in a litany of cases involving the alleged infringement or noninfringement of patents covering COPAXONE®. After Mylan filed its ANDA, Teva filed suit against Mylan and Natco in the District of Delaware on October 6,

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
TO TRANSFER VENUE TO THE DISTRICT OF DELAWARE [DKT. NO. 25]**

2014, under 35 U.S.C. § 271(e)(2)(A) (D. Del., Civ. Action No. 1:14cv1278, Dkt. No. 1).[1] The District of Delaware consolidated the action with similar suits filed by Teva against eight other entities.[2] Ultimately, in its second amended complaint, Teva alleged the infringement of four method-of-treatment patents covering the product (D. Del., Civ. Action No. 1:14cv1171 ("Teva I"), Dkt. No. 115). After a seven-day bench trial in September 2016, on January 30, 2017, the Honorable Gregory M. Sleet, United States District Judge, concluded that all of the asserted claims of the patents-in-suit are invalid as obvious (Teva I, Dkt. No. 294).

While the parties were awaiting Judge Sleet's final decision in Teva I, on December 19, 2016, Teva filed another suit in the District of Delaware, alleging infringement of an additional method-of-treatment patent covering the product, U.S. Patent No. 9,402,874 ("the '874 patent") (D. Del., Civ. Action No. 1:16cv1267 ("Teva II"), Dkt. No. 1). Mylan filed its answer in Teva II on February 8, 2017, and counterclaimed on the '775 patent, which was already the subject of this suit (Teva II, Dkt. No. 14 at 30).

---

[1] Teva also filed a protective suit in this Court, which remains stayed pending the outcome in the District of Delaware (Civ. Action No. 1:14cv167, Dkt. Nos. 1; 53; 63).

[2] Sandoz, Inc.; Momenta Pharmaceuticals, Inc.; Dr. Reddy's Laboratories, Inc.; Synthon Pharmaceuticals Inc.; Synthon B.V.; Synthon s.r.o. Blankso; Amneal Pharmaceuticals LLC; and Amneal Pharmaceuticals Co. GmbH.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
TO TRANSFER VENUE TO THE DISTRICT OF DELAWARE [DKT. NO. 25]**

Before Judge Sleet issued his decision on the method-of-treatment patents in <u>Teva I</u>, Teva filed the instant suit as well as four similar suits concerning the '775 patent against other ANDA filers that are parties to <u>Teva I</u> and <u>Teva II</u>.[3] One group of ANDA filers, Amneal Pharmaceuticals LLC and Amneal Pharmaceuticals Co. GmbH, filed a declaratory action concerning the '775 patent in the District of Delaware before Teva filed its suit on the '775 patent against them in the Eastern District of New York (D. Del., Civ. Action No. 1:17cv74, Dkt. No. 1). Likewise, on February 2, 2017, after being voluntarily dismissed by Teva from its '775 suit in the District of New Jersey, Momenta Pharmaceuticals, Inc., filed a declaratory action concerning the '775 patent in the District of Delaware (D. Del., Civ. Action No. 1:17cv109, Dkt. No. 1).

## II. DISCUSSION

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice," the Court has

---

[3] On January 13, 2017, Teva filed suit against Momenta Pharmaceuticals, Inc., and Sandoz Inc. in the District of New Jersey (D.N.J., Civ. Action No. 3:17cv275, Dkt. No. 1). Teva voluntarily dismissed Momenta Pharmaceuticals, Inc., on January 31, 2017. On January 17, 2017, Teva filed suit against Synthon Pharmaceuticals, Inc., Synthon B.V., and Synthon s.r.o. in the Southern District of New York (S.D.N.Y., Civ. Action No. 1:17cv245, Dkt. No. 1). On January 25, 2017, Teva filed suit against Dr. Reddy's Laboratories, Inc., and Dr. Reddy's Laboratories, Ltd., in the District of New Jersey (D.N.J., Civ. Action No. 3:17cv517, Dkt. No. 1). On January 25, 2017, Teva also filed suit against Amneal Pharmaceuticals LLC and Amneal Pharmaceuticals Co. GmbH in the Eastern District of New York (E.D.N.Y., Civ. Action No. 2:17cv416).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
TO TRANSFER VENUE TO THE DISTRICT OF DELAWARE [DKT. NO. 25]**

discretion to transfer a civil action to a district "where it might have been brought." "The movant typically bears the burden of demonstrating that transfer is proper," and "[t]he decision to transfer venue is left to the sound discretion of the trial court." In re Campbell Transp. Co., Inc., 368 F. Supp. 2d 553, 556 (N.D.W. Va. 2005) (citing Verosol B.V. v. Hunter Douglas, Inc., 806 F. Supp. 582, 592 (E.D. Va. 1992)). In this patent case, convenience and justice under § 1404(a) are governed by Fourth Circuit case law, but jurisdictional determinations are governed by the law of the Federal Circuit. Global Touch Solutions, LLC v. Toshiba Corp., 109 F. Supp. 3d 882, 890 (E.D. Va. 2015) (citing Avocent Huntsville Corp. v. Aten Int'l Co., Ltd., 552 F.3d 1324, 1328 (Fed. Cir. 2008)).

For the reasons that follow, the Court concludes that this case might have been brought in the District of Delaware, and despite the weight accorded to Teva's choice of forum, the defendants have established that it is in the interest of justice to transfer the case to the District of Delaware.

**A.    Jurisdiction in the District of Delaware**

The threshold question is whether the defendants have established that Teva might have brought this suit in the District of Delaware. 28 U.S.C. § 1404(a). Such a showing, of course, requires that the District of Delaware would have had subject

matter and personal jurisdiction over the parties. Both requirements are satisfied here.

First, Teva has alleged subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202 (Dkt. No. 1 at 2-3), which obtains with equal force in the District of Delaware. Second, the parties do not appear to dispute that Mylan Pharmaceuticals and Mylan Inc. are subject to personal jurisdiction in the District of Delaware pursuant to Rule 4(k)(1)(A) (Dkt. Nos. 25-1 at 11; 44 at 11-12). See Acorda Therapeutics Inc. v. Mylan Pharmaceuticals Inc., 817 F.3d 755 (Fed. Cir. 2016) (ruling that Mylan Pharmaceuticals was subject to specific personal jurisdiction in the District of Delaware based on an ANDA filing), cert. denied, 2017 WL 69716 (U.S. Jan. 9, 2017).[4] In addition, the District of Delaware would have had personal jurisdiction over Natco.

Natco is an Indian company with its principal place of business in India, and it works in concert with Mylan Pharmaceuticals and Mylan Inc. (Dkt. Nos. 1 at 2, 7-9; 25-1 at 11). In its complaint, Teva alleged that the Court has personal

---

[4] As Teva points out, whether Mylan presently consents to suit in the District of Delaware is largely inapposite to whether Teva could have brought the suit there in the first place (Dkt. No. 44 at 12). Kontoulas v. A.H. Robins Co., Inc., 745 F.2d 312, 315 (4th Cir. 1984) ("[E]ven consent to jurisdiction by a party cannot convert a federal district into one in which a suit 'might have been brought' under § 1404, if venue and jurisdiction requirements were not met at the time the suit was first filed." (citing Hoffman v. Blaski, 363 U.S. 335, 342-43 (1960))).

jurisdiction over Natco pursuant to Fed. R. Civ. P. 4(k)(2) (Dkt. No. 1 at 9).[5]

Rule 4(k)(2) provides that, "[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." In other words, the rule "allow[s] a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico, 563 F.3d 1285, 1293-94 (Fed. Cir. 2009).

Here, federal patent law creates the causes of action in Teva's complaint, and the claims thus arise under federal law as required by the first element. Touchcom, Inc. v. Bereskin & Parr, 574 F.3d 1403, 1413 (Fed. Cir. 2009) (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 809 (1988)). In addition,

---

[5] For the sake of Teva's argument, and because the District of Delaware has rejected other bases for personal jurisdiction over Natco (Dkt. No. 46-10 at 3), the Court assumes that Teva would have been forced to rely on its alternative assertion of jurisdiction under Rule 4(k)(2).

because of Natco's extensive contacts with the United States, the Court has no doubt that exercising personal jurisdiction over Natco under Rule 4(k)(2) comports with due process as required by the third element. <u>See</u> <u>Synthes</u>, 563 F.3d 1285 (finding that Rule 4(k)(2) personal jurisdiction over a Brazilian company comported with due process).

The remaining element in dispute, therefore, is whether Natco would have been "subject to jurisdiction in any state's courts of general jurisdiction" at the time Teva filed this suit. In order to decide the issue, the Court need not determine whether Natco is subject to personal jurisdiction in West Virginia or any other state. Rather, under Federal Circuit precedent, an allegation of jurisdiction under Rule 4(k)(2) places the burden on the foreign defendant to demonstrate that it is <u>not</u> subject to personal jurisdiction. In <u>Touchcom, Inc.</u>, the Federal Circuit explained that "the purposes of Rule 4(k)(2) are best achieved when the defendant is afforded the opportunity to avoid the application of the rule only when it designates a suitable forum in which the plaintiff could have brought suit." <u>Touchcom, Inc.</u>, 574 F.3d at 1415. A court may thus exercise jurisdiction under Rule 4(k)(2) if a foreign

"defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible." Id.[6]

Teva argues that, because Natco successfully defeated personal jurisdiction in Teva I, the District of Delaware could not have exercised personal jurisdiction over Natco in this case (Dkt. No. 44 at 8, 11-12). In Teva I, Teva alleged personal jurisdiction over Natco in the District of Delaware on the basis of Rule 4(k)(2) (Teva I, Dkt. No. 1 at 9). Natco sought dismissal, arguing that the District of Delaware could not exercise personal jurisdiction over it under Rule 4(k)(2). Instead, it claimed that "[s]pecific personal jurisdiction over Natco on the claims asserted here exists in the court where Teva has filed an identical lawsuit - the Northern District of West Virginia" (Teva I, Dkt. No. 35 at 7) (emphasis added). The District of Delaware ultimately dismissed Natco because, pursuant to Touchcom, Inc., it had "designate[d] a

---

[6] Natco seems to argue that it may escape the grasp of Rule 4(k)(2) in this Court by selecting Delaware as an alternative forum (Dkt. No. 49 at 6-7). Under the threshold analysis of a motion to transfer, however, that argument puts the cart before the horse. Natco did not file a motion to dismiss for lack of personal jurisdiction, in which case it would have been seeking to avoid application of Rule 4(k)(2), and the Court would have been "welcome to transfer the case as it [saw] fit." Touchcom, Inc., 574 F.3d at 1416. It filed only a motion to transfer, and seeks to take advantage of Rule 4(k)(2) in the District of Delaware. The proper inquiry is whether Teva could have filed this case in the District of Delaware, not whether Natco can now identify Delaware as a suitable alternative forum.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
TO TRANSFER VENUE TO THE DISTRICT OF DELAWARE [DKT. NO. 25]**

suitable" alternative "forum in which the plaintiff could have brought suit" (Teva I, Dkt. No. 37 at 2).

Contrary to Teva's argument, Natco's position in Teva I does not preclude it from being subject to personal jurisdiction in Delaware in other suits (Dkt. No. 49 at 6-7). In the instant complaint, Teva identified Rule 4(k)(2) as a basis for personal jurisdiction over Natco, a foreign defendant. Because of that allegation, Teva could have filed the suit against Natco in any federal district court, including the District of Delaware. The District of Delaware would only have been divested of jurisdiction under Rule 4(k)(2) if Natco again affirmatively named another forum where it would be subject to suit. See Touchcom, Inc., 574 F.3d at 1415. That Natco has conceded specific personal jurisdiction in West Virginia in a prior related action does not mean that it would have done so here. The Court thus concludes that the District of Delaware could have exercised personal jurisdiction over Natco had this case been filed there.[7]

_____

[7] The Court recognizes that this conclusion effectively allows Natco to select opposite fora in related cases. However, that result is dictated by binding precedent governing application of Rule 4(k)(2). Touchcom, Inc., 574 F.3d at 1415. Moreover, the somewhat absurd result here is limited in scope by the fact that, regardless of whether Teva theoretically could have filed this suit in any district, Natco in practice can seek transfer only to districts that meet the factor test for transfer under § 1404(a). See Plumbing Servs., 791 F.3d at 444.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE TO THE DISTRICT OF DELAWARE [DKT. NO. 25]

Therefore, because the District of Delaware could have exercised both subject matter and personal jurisdiction over each of the defendants, this action "might have been brought" in the District of Delaware. See 28 U.S.C. § 1404(a). In addition, although their consent has no bearing on whether the suit might have been brought in the District of Delaware to begin with, the defendants represent that they will not contest personal jurisdiction once the case is transferred (Dkt. No. 25-1 at 11) ("Mylan and Natco will consent to personal jurisdiction in Delaware solely for the purposes of this case.").

### B. Discretionary Factors

Under 28 U.S.C. § 1404(a), if an action might have been brought elsewhere, a district court's discretion to transfer venue lies in "the convenience of parties and witnesses" and "the interest of justice." The Court should "consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice."[8] Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v.

---

[8] Other discretionary factors that this district has previously considered are "(1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice." In re Campbell, 368 F. Supp. 2d at 555-56.

Plumbing Servs., 791 F.3d 436, 444 (4th Cir. 2015). The interest of justice outweighs all other considerations in this case, and transfer to the District of Delaware is warranted.

## 1. Plaintiff's Choice of Venue

"[A] plaintiff may ordinarily select his forum unless there are factors of convenience sufficiently important to the parties and the court to occasion denying him that choice." Carter v. Nat'l City Mortg., Inc., No. 1:14cv70, 2014 WL 2862953, at *3 (N.D.W. Va. June 24, 2014) (quoting Ellicott Mach. Corp. v. Modern Welding Co., 502 F.2d 178, 180 (4th Cir. 1974)). Indeed, "unless the balance is strongly in favor of the defendant, the plaintiffs' choice of forum should rarely be disturbed." Id. (quoting Morehead v. Barksdale, 263 F.2d 117, 119 (4th Cir. 1959)); see also Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). This is especially true when the plaintiff has selected its home forum or the nucleus of operative facts. See Samsung Elecs. Co., Ltd. v. Rambus, Inc., 386 F. Supp. 2d 708, 716 (E.D. Va. 2005).

This is not to say that the plaintiff's choice of forum is always subject to such heightened deference. "[W]here the plaintiff's choice of forum is a place where neither the plaintiff nor the defendant resides and where few or none of the events giving rise to the cause of action accrued," that choice weighs less in the Court's consideration. Klay v. AXA Equitable Life Ins.

Co., No. 5:08cv118, 2009 WL 36759, at *3 (N.D.W. Va. Jan. 6, 2009) (quoting Ion Beam Applications, S.A. v. Titan Corp., 156 F. Supp. 2d 552, 563 (E.D. Va. 2000)). "[W]hen a plaintiff chooses a forum other than its home it is often more difficult for the plaintiff to show why such a forum is more convenient for the plaintiff." Global Touch, 109 F. Supp. 3d at 896 (internal quotation omitted). "The weight is also lessened 'whe[n] a plaintiff files a preemptive declaratory judgment action in order to deprive the 'natural plaintiff'—the one who wishes to present a grievance for resolution by the court—of its choice of forum.'" D2L Ltd. v. Blackboard, Inc., 671 F. Supp. 2d 768, 779 (D. Md. 2009) (quoting Piedmont Hawthorne Aviation, Inc. v. TriTech Envtl. Health & Safety, Inc., 402 F. Supp. 2d 609, 616 (M.D.N.C. 2005)).

The defendants argue that the Court should afford Teva's choice of forum little weight because it has elected to sue outside its home forum of Delaware (Dkt. No. 25-1 at 12). Moreover, they allege that, given the number of suits and fora recently pursued by Teva, it is clearly engaged in "gamesmanship" and "forum shopping," seeking "to get a quick injunction from a court unfamiliar with the parties, facts, and product at issue, and then leverage that injunction in other courts in an effort to delay the creation of a generic market" (Dkt. Nos. 25-1 at 12-13; 49 at 13). Teva maintains that its choice is entitled to deference because Mylan

Pharmaceuticals is headquartered in West Virginia, Natco supplies ingredients to Mylan in West Virginia, and alleged infringing manufacturing and sale either has occurred or will occur in West Virginia (Dkt. No. 44 at 13-14).

The Court is not convinced by the defendants' argument that Teva's choice of forum should be afforded less weight because it is not "at home" in West Virginia. Although it is true that Teva is not incorporated or headquartered here, other relevant facts provide a sufficient basis for affording Teva's forum selection the usual degree of deference.

First, Mylan Pharmaceuticals is incorporated in West Virginia with its principal place of business in Morgantown, and Mylan Inc. is incorporated in Pennsylvania with its principal place of business nearby in Canonsburg (Dkt. No. 46-3 at 3). Mylan Pharmaceuticals compiled the ANDA related to its generic product in West Virginia. Id. Although Natco is a foreign company, Teva previously has attempted to sue Natco in Delaware, and Natco avoided being subjected to personal jurisdiction under Rule 4(k)(2) by identifying West Virginia as a suitable forum (Dkt. No. 46-10).

In addition, and more importantly, it is clear that Teva elected to file suit where the "nucleus of operative facts" took place. Samsung, 386 F. Supp. 2d at 716. In its complaint, Teva alleges chiefly that the defendants' production of the generic

product infringes the method of manufacturing claimed in the '775 patent (Dkt. No. 1 at 12-13). Mylan does not dispute that it operates a major manufacturing facility in Morgantown, West Virginia, and also operates its "global R&D center of excellence" there (Dkt. No. 44 at 4). Indeed, the defendants acknowledge "that Mylan has a significant corporate presence in West Virginia" (Dkt. No. 49 at 13). The defendants likewise do not dispute that Mylan Pharmaceuticals makes marketing decisions in West Virginia (Dkt. No. 46-3 at 3).

Therefore, Teva's decision to sue these defendants in West Virginia is perfectly reasonable, despite the fact that it is not at home here. The defendants' home fora and prior actions, as well as the facts giving rise to this case, provide sufficient support for Teva's choice. That choice is entitled to great weight in the Court's analysis of whether discretionary transfer is appropriate.

**2.   Witness Access and Party Convenience**

The second and third factors require the Court to consider "witness convenience and access," as well as "the convenience of the parties." Plumbing Servs., 792 F.3d at 444. In addition to convenience, the ease of accessing witnesses may depend upon "the cost of obtaining the attendance of witnesses [and] the availability of compulsory process." See In re Campbell, 368 F.

Supp. 2d at 555-56. These considerations lend little support to the defendants' motion.

The defendants assert only that Teva cannot claim that the District of Delaware would be a less convenient forum, as the parties have comfortably litigated there in the past (Dkt. No. 25-1 at 12-13). In fact, they concede that "[t]he convenience of the witnesses and parties is neutral" (Dkt. No. 49 at 12). As Teva points out, the Mylan defendants are centrally located in West Virginia and cannot realistically argue that litigating here would be inconvenient for them (Dkt. No. 44 at 20-21). The defendants simply have not carried their burden to demonstrate that the District of Delaware would be a more convenient forum. In re Campbell, 368 F. Supp. 2d at 556.

**3.    The Interest of Justice**

Because witness and party convenience are neutral considerations, the dispositive question is whether the interest of justice weighs so heavily in favor of transfer that it overcomes the strong presumption that Teva is entitled to select its forum. See Plumbing Servs., 792 F.3d at 444. The "interest of justice" factor "encompass[es] all those factors bearing on transfer that are unrelated to convenience of witnesses or parties." D2L Ltd., 671 F. Supp. 2d at 783-84 (quoting Howard Univ. v. Watkins, 2007 WL 763182, at *5 (D. Md. Mar. 12, 2003)); see also Samsung, 386 F.

Supp. 2d at 716 ("[T]he interest of justice may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different direction."). In light of the fact that the District of Delaware is familiar with this litigation, and that there are claims pending there challenging the '775 patent and there exists the possibility for consolidation, the Court concludes that the interest of justice outweighs Teva's choice of forum.

First, in <u>Teva I</u>, the District of Delaware recently ruled that four method-of-treatment patents covering Teva's product are invalid as obvious (<u>Teva I</u>, Dkt. No. 294). In the process, it considered evidence of the commercial success of Teva's product and garnered an understanding of why it has succeeded in the market. <u>Id.</u> at 48. This case involves a method-of-manufacturing patent rather than a method-of-treatment patent, and as Teva argues, it will undoubtedly involve different issues (Dkt. No. 44 at 6-8).[9] Nonetheless, after extensive litigation, the District of Delaware is familiar with the parties as well as the products at issue in this case. In order to rule on Teva's motion for a preliminary injunction, the presiding court will be required to consider whether the defendants' activities create "a likelihood of

---

[9] It is nonetheless possible, as the defendants argue, that Teva might assert commercial success as a secondary indicia of non-obviousness in this case as well.

substantial and immediate irreparable injury." Apple, Inc. v. Samsung Elecs. Co., 678 F.3d 1314, 1325 (Fed. Cir. 2012). Such an analysis of future economic harm will involve similar evidence as the District of Delaware considered in connection with the past commercial success of Teva's product.

Second, the '775 patent is currently at issue in a related action between the same parties in the District of Delaware. As discussed earlier, on December 19, 2016, Teva filed suit on the '874 method-of-treatment patent in the District of Delaware (Teva II, Dkt. No. 1). After Teva filed the instant suit on the '775 patent, Mylan filed counterclaims on the '775 patent in Teva II (Teva II, Dkt. No. 14 at 30). In addition, other generic producers - Amneal Pharmaceuticals LLC, Amneal Pharmaceuticals Co. GmbH, and Momenta Pharmaceuticals, Inc. - have filed declaratory actions there on the '775 patent.[10]

---

[10] Teva argues that Mylan's counterclaims, although involved in a case that Teva filed a month before this case, are "second-filed" to Teva's claims in the instant suit. Whether they are or not, when considered with the other actions on the '755 patent pending there, the counterclaims represent an opportunity for the District of Delaware to act as a central location for the litigation of infringement claims arising out of the manufacture and sale of Mylan's generic products. See Samsung, 386 F. Supp. 2d at 724 (explaining that the first-to-file "rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments. Yet, fundamental fairness dictates the need for fashioning a flexible response to the issue of concurrent jurisdiction." (quoting E.E.O.C. v. Univ. of Pennsylvania, 859 F.2d 969, 977 (3d Cir. 1988))).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
TO TRANSFER VENUE TO THE DISTRICT OF DELAWARE [DKT. NO. 25]**

"The interest of justice weighs heavily in favor of transfer when a related action is pending in the transferee forum" because transfer "facilitate[s] efficient pretrial proceedings and discovery" and "avoids inconsistent results."[11] <u>D2L Ltd.</u>, 671 F. Supp. 2d at 783-84 (citing <u>U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.</u>, 357 F. Supp. 2d 924, 938 (E.D. Va. 2005)). It is difficult to imagine a more "extravagantly wasteful and useless duplication of time and effort" than for multiple suits involving the same product and the '775 patent, instituted within only the past several months, to proceed in different districts. <u>See</u> <u>Gen. Tire & Rubber Co. v. Watkins</u>, 373 F.2d 361, 362 (4th Cir. 1967). Adjudicating these cases together in the District of Delaware will help avoid the risk that inconsistent results are reached on the same questions of fact and law. <u>See</u> <u>D2L Ltd.</u>, 671 F. Supp. 2d at 783-84. Therefore, because transfer will conserve scarce judicial resources and avoid the risk of inconsistent results in duplicative litigation, the interest of justice outweighs Teva's choice of forum in this case.

---

[11] As Teva points out, 35 U.S.C. § 299(a) precludes the District of Delaware from "consolidat[ing] for trial" § 271(e)(2) actions such as <u>Teva II</u> (Dkt. No. 44 at 19). Nonetheless, the district court would be free to consolidate discovery and pretrial proceedings in those cases, which would help conserve scarce judicial resources, and there exists the possibility that the various "accused infringer[s]" will waive the prohibition on joinder under 35 U.S.C. § 299(c).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION
TO TRANSFER VENUE TO THE DISTRICT OF DELAWARE [DKT. NO. 25]**

## III. CONCLUSION

For the reasons discussed, the Court **GRANTS** the defendants'
motion to transfer venue to the District of Delaware (Dkt. No. 25).
Pursuant to 28 U.S.C. § 1404(a), the Court **TRANSFERS** this case to
the District of Delaware.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order
to counsel of record.

DATED: March 10, 2017.

                                        /s/ Irene M. Keeley
                                        IRENE M. KEELEY
                                        UNITED STATES DISTRICT JUDGE